**LAW OFFICES OF JERRY L. STEERING**
Jerry L. Steering (SBN 122509)
Brenton Whitney Aitken Hands (SBN 308601)
Law Offices of Jerry Steering
4063 Birch Street, Suite 100
Newport Beach, California 92660
(949) 474-1849
(949) 474-1883 Fax
jerry@steeringlaw.com; jerrysteering@yahoo.com
brentonaitken@gmail.com
Attorneys for plaintiff Robert Graham Ward

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT GRAHAM WARD,<br><br>      Plaintiff,<br><br>      vs.<br><br>COUNTY OF SAN BERNARDINO and DOES 1 through 10, inclusive,<br><br>      Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES FOR VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER COLOR OF STATE LAW (42 U.S.C. § 1983) FEDERAL CONSTITUTIONAL CLAIMS FOR VIOLATION OF FOURTH AMENDMENT RIGHTS – UNLAWFUL / UNREASONABLE SEIZURE OF PERSON; VIOLATION OF FOURTH AMENDMENT RIGHTS USE OF EXCESSIVE / UNREASONABLE  FORCE UPON PERSON;  VIOLATION OF FOURTH AMENDMENT RIGHTS UNREASONABLE / UNLAWFUL ENTRY INTO AND SEARCH AND SEIZURE OF PRIVATE RESIDENCE; VIOLATION OF FIRST AMENDMENT RIGHTS [RIGHT TO PETITION GOVERNMENT FOR REDRESS OF GRIEVANCES / FREEDOM OF SPEECH]; *MONELL* |

COMPLAINT FOR DAMAGES
1

CLAIM FOR ESTABLISHMENT OF POLICY, PRACTICE AND CUSTOM OF CONSTITUTIONAL VIOLATIONS; *MONELL*[1] CLAIM FOR FAILURE TO TRAIN; CALIFORNIA STATE LAW CLAIMS FOR VIOLATION OF BANE ACT (CAL. CIV. CODE § 52.1); FALSE ARREST / FALSE IMPRISONMENT; BATTERY; ASSAULT; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; TRESPASS TO PRIVATE RESIDENCE / VIOLATION OF RIGHT TO PRIVACY and TRESPASS TO CHATTELS / CONVERSION

**COMES NOW** plaintiff Robert Graham Ward and shows this honorable court the following:

## JURISDICTIONAL ALLEGATIONS

1.      As this action is brought under 42 U.S.C. § 1983, this court has jurisdiction over this case under its federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2.      As the incidents complained of in this action occurred in the Town of Apple Valley, County of San Bernardino, State of California, within the territorial jurisdiction of this court, venue properly lies in this court pursuant to 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

3.      Plaintiff Robert Graham Ward, hereinafter referred to as "ROBERT WARD" and/or "plaintiff" and/or "WARD" is a natural person, who, at all times

---

[1] Municipal Liability Claim.

COMPLAINT FOR DAMAGES

2

complained of in this action, resided in the State of California.

4.      Defendant County of San Bernardino (hereinafter "COUNTY" or "County of San Bernardino") is a municipal entity located in the State of California; within the territorial jurisdiction of this court.

5.      Defendants DOES 1 through 8, inclusive, are sworn peace officers and deputy sheriffs and/or supervisors and/or investigators and/ Special Officers and/or a dispatchers and/or some other public officer, public official or employee of defendant COUNTY and/or with some other public entity, who in some way committed some or all of the tortious actions (and constitutional violations) complained of in this action, and/or are otherwise responsible for and liable to plaintiff for the acts complained of in this action, whose identities are, and remain unknown to plaintiff, who will amend his complaint to add and to show the actual names of said DOE defendants when ascertained by plaintiff.

6.      At all times complained of herein, DOES 1 through 8, inclusive, were acting as individual persons acting under the color of state law, pursuant to their authority as sworn peace officers and deputy sheriffs and/or Special Officers and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) and/or dispatchers and/or public officers, employed by defendant COUNTY and/or with some other public entity, and were acting in the course of and within the scope of their employment with defendant COUNTY.

7.      Defendants DOES 9 and 10, inclusive, are sworn peace officers and/or deputy sheriff and/or Supervisors and/or Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or Detectives and/or other Supervisory personnel (such as) and/or policy making and/or final policy making officials, employed by the County of San Bernardino and/or with some other public entity, who are in some substantial way liable and responsible for, or otherwise proximately caused and/or contributed to the occurrences complained of by plaintiff in this action, such as via supervisory liability (i.e. failure to properly

COMPLAINT FOR DAMAGES
3

supervise, improperly directing subordinate officers, approving actions of subordinate deputies, failing to discipline deputies), via bystander liability (failing to intervene in and stop unlawful actions of their subordinates and/or other officers), and such as by creating and/or causing the creation of and/or contributing to the creation of the policies and/or practices and/or customs and/or usages of the County of San Bernardino and/or with some other public entity, for: 1) for wrongfully arresting persons; 2) for using excessive / unreasonable force on persons; 3) for unlawfully seizing persons; 4) for unlawfully ordering persons out of their homes; 5) for unlawfully searching and seizing persons and their personalty/property; 6) for falsely arresting and falsely imprisoning persons; 7) for fabricating / destroying / concealing / altering / withholding evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other deputy sheriffs, public officers and supervisory personnel from civil, administrative and criminal liability; 8) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech; and 9) for covering-up unlawful and tortious conduct by County of San Bernardino Sheriff's Department personnel, and were a proximate cause of the very same California state law, and federal and state constitutional violations complained above, and complained of by the plaintiff in this action.

8.    Plaintiff is presently unaware of the identities of DOES 1 through 10, inclusive, and will amend his complaint to add and to show the actual names of said DOE defendants, when ascertained by plaintiff.

9.    At all times complained of herein, DOES 9 and 10, inclusive, were acting were acting as individual persons acting under the color of state law, pursuant to their authority as top/final policymaking officials, and/or Supervisory Officers, including the elected Sheriff of San Bernardino County, the Undersheriff and Assistant Sheriffs, Commanders and/or Captains and/or Lieutenants and/or

Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials, employed by COUNTY and/or with some other public entity, and/or some other public official(s) with the COUNTY and/or with some other public entity, and were acting in the course of and within the scope of their employment with defendant COUNTY and/or with some other public entity.

10.    At all times complained of herein, defendants DOES 9 and 10, inclusive, were acting as individual persons under the color of state law; under and pursuant to their status and authority as the elected Sheriff of San Bernardino County, the Undersheriff and Assistant Sheriffs, Commanders and/or Captains and/or Lieutenants and/or Sergeants and/or other Supervisory personnel and/or policy making and/or final policy making officials and/or Supervisory peace officers (as described herein, above and below), and/or policy making peace officers, with defendant COUNTY and/or with some other public entity.

11.    Moreover, at all times complained of herein, defendants DOES 1 through 10, inclusive, were acting pursuant to, or otherwise contributed to the creation and maintenance of, the customs, policies, usages and practices of the County of San Bernardino and/or with some other public entity, for, inter alia: 1) for wrongfully arresting persons; 2) for using excessive / unreasonable force on persons; 3) for unlawfully seizing persons; 4) for unlawfully ordering persons out of their homes; 5) for conducting civil liability investigations under the ruse of "internal affairs investigations," taking un-Mirandized statements from victims of police abuse after constitutional violations have taken place to protect the County of San Bernardino from civil liability; 6) for unlawful searching and seizing persons and their personalty / property; 7) for falsely arresting and falsely imprisoning persons; 8) for fabricating / destroying / concealing / altering / withholding evidence in criminal and civil actions, and for otherwise "framing" persons in criminal actions, in order to falsely and maliciously, oppressively convict innocent persons, to protect them and other police officers and supervisory

COMPLAINT FOR DAMAGES

5

personnel from civil, administrative and criminal liability; 9) for interfering with persons' and/or otherwise violating persons' constitutionally protected right to free speech; and 10) for covering-up unlawful and tortious conduct by the County of San Bernardino and/or with some other public entity personnel, and were a proximate cause of the very same California state law, and federal and state constitutional violations complained above, and complained of by the plaintiff in this action.

12.    In addition to the above and foregoing, defendants DOES 1 through 8, inclusive, acted pursuant to a conspiracy, agreement and understanding and common plan and scheme to deprive the plaintiff Robert Ward of his federal Constitutional and statutory rights, as complained of in this action, and acted in joint and concerted action to so deprive plaintiff Robert Ward of those rights as complained of herein; all in violation of 42 U.S.C. § 1983, and otherwise in violation of United States (Constitutional and statutory) law.

13.    Said conspiracy / agreement / understanding / plan / scheme / joint action / concerted action, above-referenced, was a proximate cause of the violation of the plaintiff Robert Ward's federal and state constitutional and statutory rights, as complained of herein.

### FIRST CAUSE OF ACTION
**UNREASONABLE SEIZURE OF PERSON UNDER**
**FOURTH AMENDMENT**
**[42 U.S.C. § 1983]**
**(By Plaintiff ROBERT WARD Against**
**Defendants DOES 1 through 8, inclusive)**
**(The December 26, 2023 Incident or "The First Incident")**

14.    Plaintiff hereby realleges and incorporate by reference the allegations set forth in paragraphs 1 through 13, inclusive, above, as if set forth in full herein.

15.    On or about December 26, 2023, plaintiff WARD was at his home located at 20843 Waalew Road, Space C111, in the Town of Apple Valley, California, when he was woken up by loud banging on his back door.

16.    When plaintiff WARD answered his door, there were several unidentified San Bernardino Sheriff's Department deputy sheriffs at his door, DOES 1 through 8, inclusive, asking about the whereabouts of his stepson, Nicholas Allan Moores, and his son's friend.

17.    Plaintiff WARD informed said deputy sheriffs that as far as he knew, his stepson was not home, as plaintiff had just woken up.

18.    Said presently unidentified deputy sheriffs defendants DOES 1 through 8, inclusive, asked plaintiff WARD to enter his house, and plaintiff asked them if they had a warrant, to which they replied they did not. Plaintiff WARD informed said unidentified deputy sheriffs that they could not enter his home without a warrant.

19.    Moreover, said defendants DOES 1 through 8, inclusive, then inquired of plaintiff WARD if anyone else was in his home, to which plaintiff replied that his stepson's pregnant girlfriend, Brittanie Chapman, his daughter, Shannon Ward, and her boyfriend, Jamal Robinson were inside of his home.

20.    Thereafter, defendants DOES 1 through 8, inclusive, asked to speak with Brittanie Chapman, and plaintiff WARD agreed to go get her; however, as soon as she approached the door, said deputies forcefully grabbed her and pulled her outside of plaintiff's home.

21.    When plaintiff WARD stepped forward to understand why defendants DOES 1 through 8, inclusive, were handling her so aggressively, defendant DOE 1 accused plaintiff WARD about lying about the whereabouts of his stepson.

22.    Before plaintiff WARD could even respond to the false allegation, defendants DOES 1 through 8, inclusive, rushed into plaintiff's home without his consent, a warrant, and in the absence of exigent circumstances or any other emergency situation.

23.    Once inside plaintiff WARD's home, defendants DOES 1 through 8,

COMPLAINT FOR DAMAGES

7

inclusive, began physically assaulting and battering plaintiff WARD by grabbing him, pulling him back and forth and kicking at his legs.

24.    Plaintiff WARD repeatedly told the deputies that they were unlawfully in his home, but they continued to manhandle/brutalize him.

25.    Defendants DOES 1 through 8, inclusive, twisted plaintiff WARD's arms behind his back, slammed his head into a wall, creating a hole in the same.

26.    Thereafter, defendants DOES 1 through 8, inclusive, plaintiff WARD without any justification.

27.    Defendants DOES 1 through 8, inclusive, cinched down the handcuffs excessively tight, causing injuries to plaintiff's hands and wrists.

28.    During this time, there was another unidentified individual outside of plaintiff WARD's home, and that person had claimed that plaintiff's stepson had stolen his tools.

29.    Thereafter, defendants DOES 1 through 8, inclusive, began handing over plaintiff WARD's personal tools and equipment directly to this aforementioned unidentified individual.

30.    Plaintiff WARD verbally protested the theft/seizure of his personal property, of his tools, by defendants DOES 1 through 8, inclusive, to defendants DOES 1 through 8, inclusive.

31.     Plaintiff WARD also verbally protested defendants DOES 1 through 8, inclusive not providing him any documentation of what items of plaintiff's personal property were being seized[2], stolen and given to a person that plaintiff WARD did not know.

32.    Thereafter, defendants DOES 1 through 8, inclusive, placed plaintiff WARD in the back of a San Bernardino County Sheriff's Department patrol car

---

[2] Such as a property receipt.

COMPLAINT FOR DAMAGES

8

outside of his home for approximately seven hours, in severe pain and discomfort.

33.     Plaintiff WARD repeatedly asked defendants DOES 1 through 8, inclusive, to loosen his handcuffs and why he was being detained, but his questions were ignored by said DOE defendants.

34.     At some point during his unlawful seizure/arrest, plaintiff WARD was told by defendant DOE 1 and/or DOE 2, that plaintiff WARD had given consent to search his house—something that was not true.

35.     Thereafter, defendant DOES 1 through 8, inclusive, unlawfully entered plaintiff WARD's home without a warrant, unlawfully searched plaintiff WARD's home and ransacked it, causing significant damage and unlawfully seizing plaintiff WARD's personal property, including his deceased wife's wedding ring and other valuables.

36.     After spending approximately seven hours handcuffed and in great pain in the back of a San Bernardino County Sheriff's Department patrol car, defendant DOES 1 through 8, inclusive, released plaintiff WARD and left him in severe physical pain and bruising to his arms and wrists.

37.     After The December 26, 2023 Incident / "The First Incident", plaintiff WARD was taken to Providence St. Mary Medical Center in Apple Valley, California where doctors confirmed that plaintiff WARD's arms were strained from the excessive handcuffing by said unidentified deputies.

38.     The seizure of plaintiff WARD was done by defendant DOES 1 through 8, inclusive, was done in the absence of any reasonable suspicion of criminality afoot by defendant DOES 1 through 8, inclusive, and in the absence of probable cause for defendant DOES 1 through 8, inclusive, to believe that plaintiff WARD had committed a crime, and was done in an unreasonable manner.

39.     Moreover, as a result of this incident plaintiff WARD suffered a stroke that left him partially disabled and he had to spend several weeks in a recovery and rehabilitation center; Apple Valley Post Acute Care Center in Apple

Valley, California.

**The January 2, 2024-January 5, 2024 Incident ("The Second Incident")**

40. Thereafter, approximately seven to ten days after the First Incident of December 26, 2023, sometime between January 2, 2024 and January 5, 2024, several certain unidentified deputies with the San Bernardino County Sheriff's Department, defendants DOES 1 through 8, inclusive, arrived at plaintiff WARD's home.

41. When plaintiff WARD answered the door he saw defendants DOES 1 through 8, inclusive, who claimed to have a search warrant.

42. When plaintiff WARD asked to see the warrant defendants DOES 1 through 8, inclusive, refused to produce it.

43. Thereafter, defendants DOES 1 through 8, inclusive, unlawfully entered plaintiff WARD's home in the absence of a warrant, consent or an emergency, and proceeded to handcuff plaintiff and his daughter, Shannon Ward.

44. Defendants DOES 1 through 8, inclusive, cinched down the handcuffs on plaintiff excessively tight, causing injuries to plaintiff's hands and wrists, and causing him to suffer terrible physical, mental and emotional pain, suffering and distress.

45. Plaintiff WARD verbally protested the unlawful entry into and search of his home and the unlawful seizure and handcuffing of plaintiff, and verbally protested about the pain and suffering the handcuffs were causing him, to defendants DOES 1 through 8, inclusive.

46. Thereafter, plaintiff WARD and his daughter were forced outside of their home by defendants DOES 1 through 8, inclusive, and were made to sit outside on a curb for approximately two hours, still handcuffed.

47. Defendants DOES 1 through 8, inclusive, entered plaintiff WARD's home without consent, a warrant or an emergency or exigent circumstances.

48. During this unlawful search of plaintiff WARD's home, defendants

DOES 1 through 8, inclusive, turned all of the security cameras in the home against the walls to prevent any recordings of their actions.

49.     Said unidentified deputies, DOES 1 through 8, inclusive, unlawfully seized additional items of personal property, including a rare 1884 Winchester rifle and plaintiff WARD's deceased wife's jewelry went missing. Said unidentified deputies gave no explanation of what they were looking for and gave no documentation of the items that were unlawfully seized/stolen.

50.     The seizure of plaintiff WARD was done by defendant DOES 1 through 8, inclusive, was done in the absence of any reasonable suspicion of criminality afoot by defendant DOES 1 through 8, inclusive, and in the absence of probable cause for defendant DOES 1 through 8, inclusive, to believe that plaintiff WARD had committed a crime, and was done in an unreasonable manner.

51.     Moreover, as a result of this incident plaintiff WARD suffered a substantial physical, mental and emotion pain, suffering and distress.

**The August 12, 2024 Incident ("The Third Incident")**

52.     On August 12, 2024, plaintiff WARD was in the shower when he heard a loud banging on his door.

53.     When plaintiff WARD opened the door, defendants DOES 1 through 8, inclusive, said they were looking for plaintiff's stepson, Nicholas Allan Moores.

54.     Plaintiff WARD told defendants DOES 1 through 8, inclusive, that he did not know where his stepson was, and refused to let them in his home without a warrant.

55.     Said unidentified deputies became agitated and asked repeatedly for entry into plaintiff WARD's home, and plaintiff repeatedly denied defendants DOES 1 through 8, inclusive, entry into his home while plaintiff was standing inside of his home, inside of the doorway area.

56.     Plaintiff WARD told defendants DOES 1 through 8, inclusive, that he had suffered a stroke due to their prior actions (e.g., "The First Incident") and

COMPLAINT FOR DAMAGES

11

now he was disabled/partially paralyzed on his left side.

57.    Defendants DOES 1 through 8, inclusive mocked his disability and accused plaintiff WARD of stalling for his stepson.

58.    Thereafter, defendants DOES 1 through 8, inclusive, asked plaintiff WARD to step outside, and he refused. telling them that he did not feel safe doing so.

59.    In response to his refusal to step outside of his home, defendants DOES 1 through 8, inclusive, crossed the threshold of the doorway of plaintiff's home and reached for and forcibly grabbed plaintiff WARD, causing a bruise on his arm, and struck the side of his head, where he had previously suffered a stroke.

60.    Plaintiff WARD verbally protested defendants DOES 1 through 8, inclusive, use of excessive force and the unlawful assaults and batteries upon his person without any justification for their doing so to him.

61.    The striking of plaintiff WARD's head by defendants DOES 1 through 8, inclusive, was severe enough to break his nose and caused him intense pain to his head, and further led plaintiff to fear further damage to the blood clot from his prior stroke.

62.    Plaintiff WARD was then handcuffed by said unidentified deputies, and the handcuffs were cinched down excessively tight causing injuries and severe pain to plaintiff's wrists and arms.

63.    Plaintiff WARD was then thrown into and confined the back of a patrol car for several hours, and defendants DOES 1 through 8, inclusive, refused to release him until he consented to a search of his home.

64.    Plaintiff WARD verbally protested the unlawful entry into his home and the unlawful handcuffing of plaintiff, and verbally protested about the pain and suffering the handcuffs were causing him.

65.    Due to the intense pain being inflicted upon him handcuffs in the back of a patrol car and concern for his health, plaintiff WARD reluctantly

COMPLAINT FOR DAMAGES

succumbed to defendants DOES 1 through 8, inclusive's coercion to keep plaintiff confined and handcuffed in the patrol car unless he consented to defendants DOES 1 through 8, inclusive deputies searching his home, and under coercion and threats told defendants DOES 1 through 8, inclusive that they could enter his home.

66.    Once again defendants DOES 1 through 8, inclusive seized and left with various items of plaintiff personal property from his home, and once again they did not provide any documentation (i.e., a property receipt) of any items they took from plaintiff WARD's home.

67.    Following this incident, plaintiff WARD was seen by a nurse at the rehabilitation center where he receives treatment the stroke that he suffered from defendants DOES 1 through 8, inclusive's actions, above-described, Apple Valley Post Acute Care Center in Apple Valley, California

68.    When plaintiff WARD was at Apple Valley Post Acute Care Center in Apple Valley, California, a nurse there confirmed that plaintiff had suffered a broken nose after being punched/hit by defendants DOES 1 through 8, inclusive.

69.    Thereafter, plaintiff WARD was taken to the emergency room at Providence St. Mary Medical Center in Apple Valley, California, where a CT scan was performed to check for further damage to plaintiff's head, where it was confirmed that said unidentified deputies had broken plaintiff WARD's nose.

70.    The seizure of plaintiff WARD was done by defendant DOES 1 through 8, inclusive, was done in the absence of any reasonable suspicion of criminality afoot by defendant DOES 1 through 8, inclusive, and in the absence of probable cause for defendant DOES 1 through 8, inclusive, to believe that plaintiff WARD had committed a crime, and was done in an unreasonable manner.

71.    The actions of defendants DOES 1 through 8, inclusive, as complained above herein (The First, Second and Third Incidents), constituted a violation of plaintiff WARD's rights under the Fourth Amendment to the United

COMPLAINT FOR DAMAGES

13

States Constitution to be free from the unlawful and unreasonable seizure his person.

72.     As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 8, inclusive, plaintiff WARD was: 1) substantially physically, mentally and emotionally injured, 2) incurred medical costs and expenses, 3) incurred property damages to his home and the loss of his personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

73.     The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00 against each defendant, save defendant COUNTY.

**SECOND CAUSE OF ACTION**
**USE OF UNREASONABLE FORCE ON PERSON**
**UNDER FOURTH AMENDMENT**
**[42 U.S.C. § 1983]**
**By Plaintiff ROBERT WARD Against Defendants COUNTY and**
**DOES 1 through 8, inclusive)**
**(The December 26, 2023 Incident or "The First Incident")**

74.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 73, inclusive, above, as if set forth in full herein.

75.     As shown above, on or about December 26, 2023, plaintiff WARD was at his home located at 20843 Waalew Road, Space C111, in the Town of Apple Valley, California, when he was woken up by loud banging on his back door.

76.     As shown above, when plaintiff WARD answered his door, there were several unidentified San Bernardino Sheriff's Department deputy sheriffs at

outside of his door, defendants DOES 1 through 8, inclusive, asking about the whereabouts of his stepson, Nicholas Allan Moores, and his son's friend, while plaintiff WARD stood inside of his home, inside of his doorway.

77.    As shown above, plaintiff WARD informed said unidentified deputy sheriffs that as far as he knew, his stepson was not home as plaintiff had just woken up.

78.    As shown above, defendants DOES 1 through 8, inclusive, asked plaintiff WARD to enter his house, and plaintiff asked them if they had a warrant, to which they replied they did not.

79.    Plaintiff WARD informed defendants DOES 1 through 8, inclusive, that they could not enter his home without a warrant.

80.    As shown above, said unidentified deputy sheriffs then inquired of plaintiff WARD if anyone else was in his home, to which plaintiff replied that his stepson's pregnant girlfriend, Brittanie Chapman, his daughter, Shannon Ward, and her boyfriend, Jamal Robinson were inside of his home.

81.    Thereafter, as shown above, said deputy sheriffs asked to speak with Brittanie Chapman, and plaintiff WARD agreed to go get her. However, as soon as she approached the door, said unidentified deputies forcefully grabbed her and pulled her outside of plaintiff's home.

82.    As shown above, when plaintiff WARD stepped forward to understand why said deputy sheriffs were handling her so aggressively, one deputy accused plaintiff WARD about lying about the whereabouts of his stepson.

83.    Before plaintiff WARD could even respond to the false allegation, defendants DOES 1 through 8, inclusive, rushed into plaintiff's home without his consent, a warrant or exigent circumstances, and in the absence of an emergency.

84.    As shown above, once inside plaintiff WARD's home, defendants DOES 1 through 8, inclusive, began physically assaulting and battering plaintiff WARD by grabbing him, pulling him back and forth and kicking at his legs.

COMPLAINT FOR DAMAGES

15

85.    Plaintiff WARD repeatedly told defendants DOES 1 through 8, inclusive, that they were unlawfully in his home, but they continued to manhandle and to brutalize him.

86.    Defendants DOES 1 through 8, inclusive, twisted plaintiff WARD's arms behind his back, slammed his head into a wall, creating a hole in the same.

87.    Thereafter, as shown above, said deputy sheriffs then handcuffed plaintiff WARD without any legal or moral justification.

88.    Defendants DOES 1 through 8, inclusive, cinched down the handcuffs excessively tight, causing injuries to plaintiff's hands and wrists.

89.    As shown above, during this time, there was another unidentified individual outside of plaintiff WARD's home, and that person had claimed that plaintiff's stepson had stolen his tools.

90.    Thereafter, as shown above, defendants DOES 1 through 8, inclusive, began handing over plaintiff WARD's personal tools and equipment directly to this aforementioned unidentified individual.

91.    Plaintiff WARD verbally protested the theft/seizure of his personal property, his tools, to defendants DOES 1 through 8, inclusive, and defendants DOES 1 through 8, inclusive failing and refusing to provide to plaintiff WARD any documentation (i.e. a property receipt) of what items were being seized, stolen and given to a person that plaintiff WARD did not know.

92.    Thereafter, as shown above, plaintiff WARD was placed in the back of a San Bernardino County Sheriff's Department police car outside of his home for approximately seven hours in severe pain and discomfort, and plaintiff WARD repeatedly asked why he was being detained, but his questions were ignored by defendants DOES 1 through 8, inclusive.

93.    As shown above, at some point during his unlawful seizure/arrest, plaintiff WARD was told by defendant DOE 1 and/or DOE 2, that plaintiff WARD had given consent to search his house—something that was not true.

COMPLAINT FOR DAMAGES

94.     Thereafter, as shown above, defendant DOES 1 through 8, inclusive, unlawfully entered plaintiff WARD's home without a warrant, unlawfully searched plaintiff WARD's home and ransacked it, causing significant damage and unlawfully seizing plaintiff WARD's personal property, including his deceased wife's wedding ring and other valuables.

95.     As shown above, after spending approximately seven hours handcuffed in the back of a police car, defendant DOES 1 through 8, inclusive, released plaintiff WARD and left him in severe physical pain and bruising to his arms and wrists.

96.     As shown above, sometime after the subject incident, plaintiff WARD was taken to Providence St. Mary Medical Center in Apple Valley, California where doctors confirmed that plaintiff WARD's arms were strained.

97.     Moreover, as shown above, as a result of this incident plaintiff WARD suffered a stroke that left him partially disabled and he had to spend several weeks in a recovery and rehabilitation center, Apple Valley Post Acute Care Center in Apple Valley, California.

**The January 2, 2024-January 5, 2024 Incident ("The Second Incident")**

98.     Thereafter, as shown above, approximately seven to ten days after the First Incident of December 26, 2023, sometime between January 2, 2024 and January 5, 2024, several certain unidentified deputies with the San Bernardino County Sheriff's Department, DOES 1 through 8, inclusive, arrived at plaintiff WARD's home.

99.     As shown above, when plaintiff WARD answered the door and said unidentified deputies claimed to have a search warrant. When plaintiff WARD asked to see the warrant, said unidentified deputies refused to produce it.

100.    Thereafter, as shown above, said unidentified deputies unlawfully entered plaintiff WARD's home and proceeded to handcuff plaintiff and his daughter, Shannon Ward. Said unidentified deputies cinched down the handcuffs

excessively tight, causing injuries to plaintiff's hands and wrists.

101.   Plaintiff WARD verbally protested the unlawful entry into his home and the unlawful handcuffing of plaintiff, and verbally protested about the pain and suffering the handcuffs were causing him.

102.   Thereafter, as shown above, plaintiff WARD and his daughter were forced outside of their home and sit outside on a curb for approximately two hours.

103.   As shown above, said unidentified deputies entered plaintiff WARD's home without consent, a warrant or exigent circumstances.

104.   As shown above, during this unlawful search of plaintiff WARD's home, defendants DOES 1 through 8, inclusive, turned all of the security cameras in the home against the walls to prevent any recordings of their actions.

105.   Moreover, as shown above, defendants DOES 1 through 8, inclusive, unlawfully seized additional items of plaintiff's personal property, including a rare 1884 Winchester rifle and plaintiff WARD's deceased wife's jewelry went missing.

106.   Defendants DOES 1 through 8, inclusive, gave no explanation of what they were looking for and gave no documentation of the items that were unlawfully seized/stolen (i.e. a property receipt).

**The August 12, 2024 Incident ("The Third Incident")**

107.   As shown above, on August 12, 2024, plaintiff WARD was in the shower when he heard a loud banging on his door.

108.   Thereafter, as shown above, when plaintiff WARD opened the door, certain unidentified San Bernardino Sheriff's Department deputy sheriffs, defendants DOES 1 through 8, inclusive, said they were looking for plaintiff's stepson, Nicholas Allan Moores.

109.  As shown above, plaintiff WARD told defendants DOES 1 through 8, inclusive, that he did not know where his stepson was, and refused to let them in his home without a warrant.

110.   Moreover, as shown above, defendants DOES 1 through 8, inclusive, asked repeatedly for entry into plaintiff WARD's home, and plaintiff repeatedly denied defendants DOES 1 through 8, inclusive, into his home.

111.   As shown above, plaintiff WARD told defendants DOES 1 through 8, inclusive, that he had suffered a stroke due to their prior actions (e.g., "The First Incident") and now he was disabled/partially paralyzed on his left side.

112.   Defendants DOES 1 through 8, inclusive, mocked his disability and accused plaintiff WARD of stalling for his stepson.

113.   Thereafter, as shown above, defendants DOES 1 through 8, inclusive, asked plaintiff WARD to step outside of his home, and he refused to do so, telling defendants DOES 1 through 8, inclusive, that he did not feel safe coming outside with them there.

114.   As shown above, in response to his refusal to step outside of his home, defendants DOES 1 through 8, inclusive, forcibly grabbed plaintiff WARD, causing a bruise on his arm, and struck the side of his head, where he had previously suffered a stroke.

115.   Also, as shown above, plaintiff WARD verbally protested defendants DOES 1 through 8, inclusive's, use of excessive force and the unlawful assaults and batteries upon his person without any legal or moral justification.

116.   As shown above, the striking of plaintiff WARD's head by defendants DOES 1 through 8, inclusive was severe enough to break his nose and caused him intense pain to his head, and further led plaintiff to fear further damage to the blood clot from his prior stroke.

117.   As shown above, thereafter, as shown above, plaintiff WARD was then handcuffed by defendants DOES 1 through 8, inclusive and the handcuffs were cinched down excessively tight causing injuries to plaintiff's wrists and arms.

118.   Also as shown above, plaintiff WARD was then thrown into and confined the back of a San Bernardino County Sheriff's Department patrol car for

COMPLAINT FOR DAMAGES

several hours, and defendants DOES 1 through 8, inclusive, refused to release him until he consented to a search of his home.

119.   Also as shown above, plaintiff WARD verbally protested the unlawful entry into his home and the unlawful handcuffing of plaintiff, and verbally protested about the pain and suffering the handcuffs were causing him.

120.   Also as shown above, due to the intense pain being inflicted upon him handcuffs in the back of a patrol car and concern for his health, plaintiff WARD reluctantly succumbed to defendants DOES 1 through 8, inclusive's coercion to keep plaintiff confined and handcuffed in the patrol car unless he consented to defendants DOES 1 through 8, inclusive deputies searching his home, and under coercion and threats told defendants DOES 1 through 8, inclusive that they could enter his home.

121.   Also as shown above, following this incident, plaintiff WARD was seen by a nurse at the rehabilitation center where he receives treatment for the stroke that he suffered from defendants DOES 1 through 8, inclusive's actions, above-described, Apple Valley Post Acute Care Center in Apple Valley, California

122.   Also as shown above, when plaintiff WARD was at Apple Valley Post Acute Care Center in Apple Valley, California, a nurse there confirmed that plaintiff had suffered a broken nose after being punched/hit by defendants DOES 1 through 8, inclusive.

123.    Also as shown above, thereafter, plaintiff WARD was taken to the emergency room at Providence St. Mary Medical Center in Apple Valley, California, where a CT scan was performed to check for further damage to plaintiff's head, where it was confirmed that said unidentified deputies had broken plaintiff WARD's nose.

124.   Accordingly, the actions of defendants DOES 1 through 8, inclusive, as complained above herein, constituted a violation of plaintiff WARD's rights

under the Fourth Amendment to the United States Constitution to be free from the use of unlawful and unreasonable and excessive force upon his person.

125.    As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 10, inclusive, plaintiff WARD was: 1) substantially physically, mentally and emotionally injured, 2) incurred medical costs and expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

126.    The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00 against each defendant, save defendant COUNTY.

### THIRD CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
**Violation Of Fourth Amendment Rights**
**Unreasonable / Unlawful Entry Into And**
**Search and Seizure of Private Residence and Personal Property**
**(By Plaintiff ROBERT WARD Against Defendants COUNTY and**
**DOES 1 through 8, inclusive)**

127.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 126, inclusive, above, as if set forth in full herein.

128.    Also as shown above, defendants DOES 1 through 8, inclusive, had no search warrants or arrest warrants for plaintiff WARD, had no voluntary consent to have entered his home, and there was no emergency situation at plaintiff's home, and nonetheless defendants DOES 1 through 8, inclusive, unlawfully entered plaintiff's home, unlawfully searched and unlawfully seized items of plaintiff WARD's personal property.

129.    Also as shown above, defendants DOES 1 through 8, inclusive had

COMPLAINT FOR DAMAGES
21

no lawful reason to have physically battered and assaulted plaintiff WARD on several occasions above-described, kicking at his legs, slamming his head into a wall creating a hole, straining his arms with physical force, handcuffing him numerous times without justification, causing bleeding and injuries to his wrists, detaining/arresting plaintiff WARD for many hours without justification (i.e., no reasonable suspicion of criminality afoot of/by plaintiff, or probable cause for plaintiff's arrest) on those several occasions above-described, entering past the threshold of the doorway of plaintiff's home and dragging him out of the same several times, stealing plaintiff's personal property and ransacking his home, and had no lawful reason to have seized plaintiff WARD in any way, nor to have entered, searched and ransacked plaintiff's home or steal his personal property, which they did during the three events complained of above, all without consent, a warrant or any exigency or emergency.

130.    Also as shown above, in addition, there was no emergency or exigent circumstances then readily apparent, and was plenty of time for defendants DOES 1 through 8, inclusive, to have obtained a search warrant for the plaintiff's home if they believed any grounds then existed to obtain a search warrant (which there was none).

131.    Furthermore, defendants DOES 1 through 8, inclusive, also participated in, aided, abetted, encouraged or otherwise caused the deprivation and violation of plaintiff's Fourth Amendment rights, as complained of in this action.

132.    Accordingly, the conduct of defendants DOES 1 through 8, inclusive, as complained of in this action, constituted a violation of plaintiff Robert Ward's rights to be free from an unlawful entry into, and unlawful search and seizure of his home and of his private personal property under the Fourth Amendment to the United States Constitution.

133.    As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 8, inclusive, plaintiff WARD was: 1) substantially

COMPLAINT FOR DAMAGES

22

physically, mentally and emotionally injured, 2) incurred medical costs and expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

134.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**Violation Of First Amendment Right To**
**Freedom Of Speech / Right To Petition Government For**
**Redress Of Grievances**
**[42 U.S.C. § 1983]**
**(By Plaintiff ROBERT WARD Against Defendants COUNTY and DOES 1**
**through 8, inclusive)**

135.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 134, inclusive, above, as if set forth in full herein.

136.   As shown above, defendants DOES 1 through 8, inclusive had no lawful reason to have physically battered and assaulted plaintiff WARD on several occasions above-described, kicking at his legs, slamming his head into a wall creating a hole, straining his arms with physical force, handcuffing him numerous times without justification, causing bleeding and injuries to his wrists, detaining/arresting plaintiff WARD for many hours without justification on several occasions above-described, dragging him out of his home several times, stealing his property and ransacking his home, cinching down the handcuffs on plaintiff, mocking and badgering the plaintiff, confining plaintiff in the patrol cars,

all with having no lawful reason to have inflicted any of these outrages upon plaintiff Robert Ward, and all without any legal or moral justification.

137.   A substantial or motivating factor for the unlawful seizure of plaintiff WARD and his property by defendants, for the defendants' use of force upon him, to search his home, to yank/drag him out of his home, to steal his personal property, to handcuff plaintiff and to cinch down those handcuffs so tightly as to inflict terrible pain and suffering, both physical and mental, and the other outrages perpetrated by defendants DOES 1 through 8, inclusive, was to retaliate against him for verbally protesting this mistreatment by defendant DOES 1 through 8, inclusive.

138.   Moreover, the use of unreasonable force upon plaintiff and his unlawful seizure was done to further deprive him / in retaliation for plaintiff Robert Ward's exercise of his First Amendment rights.

139.   Plaintiff WARD's verbal protests to defendants DOES 1 through 8, inclusive, for being assaulted, battered, and falsely seized inside his home, having his home unlawfully searched, having his personal property stolen, being unlawfully detained and arrested, and so seized in an unreasonable manner, is constitutionally protected speech under the First Amendment to the United States Constitution.

140.   A substantial or motivating factor in the decision of the defendants to take said actions in against plaintiff Robert Ward, was his exercise of his right to freedom of speech / right to petition, as described above.

141.   But for plaintiff WARD's exercise of his right to freedom of speech / right to petition as described above, said defendants would not have taken the actions against Plaintiff WARD that they did.

142.   As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 8, inclusive, plaintiff WARD was: 1) substantially physically, mentally and emotionally injured, 2) incurred medical costs and

expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

143.　The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00.

## FIFTH CAUSE OF ACTION
## [VIOLATION OF 42 U.S.C. § 1983]
## Claim Against Local Governing Body Defendants Based On
## Failure To Train
## (By Plaintiff ROBERT WARD Against Defendants COUNTY
## and DOES 9 and 10)

144.　Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 143 inclusive, above, as if set forth in full herein.

145.　As shown above, when defendants DOES 1 through 10, inclusive, deprived plaintiff WARD of his particular rights under the United States Constitution, they were acting under the color of state law.

146.　The training policies of defendants COUNTY and DOES 9 and 10, inclusive, were not adequate to train their police officers and other sworn peace officer personnel to handle the usual and recurring situations with which they must deal with as sworn peace officers, to wit; defendants COUNTY and DOES 7 through 10, inclusive, failed to train its police officers that they have no right to: 1) unlawfully seize / steal persons' personal property / personalty and give that property to unknown third parties or otherwise seize / steal personal property without documenting what was being seized / stolen; 2) unlawfully physically assault, batter and use excessive force on persons without justification as

COMPLAINT FOR DAMAGES
25

retaliation for homeowners' refusal to consent to the unlawful entries and unlawful searches of their private residences; 3) unlawfully enter and search private residences without a warrant, consent, exigency or emergency, and ransack and destroy those persons' homes; 4) falsely detain / arrest / seize persons without a warrant, probable cause or a reasonable suspicion that those persons had committed a crime; 5) handcuff persons excessively tight until their wrists bleed when those persons have not committed a crime; 6) falsely detain / arrest / seize persons and keep them handcuffed in the back of a patrol car or seated on a curb for many hours longer than necessary while unlawfully searching and seizing private residences and personal property when those persons have not committed a crime; and 7) spoliation of evidence by turning security cameras towards walls when conducting unlawful searches and seizures of private property and other federal and state constitutional violations to cover up their unlawful conduct.

147.    Defendants COUNTY and DOES 9 and 10, inclusive, knew that their deputy sheriffs / peace officers would be dispatched and would otherwise have to deal with calls involving alleged stolen property, yet they failed to properly train their deputy sheriffs and other sworn peace officer personnel adequately and were the proximate cause of the very same California state law, and federal and state constitutional violations complained above, and complained of by the plaintiff in this action.

148.    Defendants COUNTY and DOES 9 and 10, inclusive, were deliberately indifferent to the obvious consequences of their failure to train their deputy sheriffs and other sworn peace officer personnel adequately; and

149.    The failure of defendants COUNTY and DOES 9 and 10, inclusive, to provide adequate training caused the deprivation of plaintiff's rights by the defendants DOES 1 through 8, inclusive, COUNTY and DOES 9 and 10, inclusive; that is, the defendants' failure to train is so closely related to the

deprivation of plaintiff's rights as to be the moving force that caused the ultimate injury.

150.    As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 10, inclusive, plaintiff WARD was: 1) substantially physically, mentally and emotionally injured, 2) incurred medical costs and expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $3,000.000.00.

151.    The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $3,000,000.00.

### SIXTH CAUSE OF ACTION
### Violation of Cal. Civil Code § 52.1
**Under California State Law**
**(By Plaintiff ROBERT WARD Against Defendants COUNTY**
**and DOES 1 through 8, inclusive)**
**For the August 12, 2024 Incident ("The Third Incident")**

152.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 151, inclusive, above, as if set forth in full herein. Plaintiff also incorporates paragraphs 40 through 54, and paragraphs 84 through 98 ("The Third Incident"), inclusive, above, as if set forth in full herein.

153.    As shown above, on August 12, 2024, plaintiff WARD was in the shower when he heard a loud banging on his door.

154.    Thereafter, as shown above, when plaintiff WARD opened the door, certain unidentified San Bernardino Sheriff's Department deputy sheriffs, defendants DOES 1 through 8, inclusive, said they were looking for plaintiff's

COMPLAINT FOR DAMAGES

27

stepson, Nicholas Allan Moores.

155.   As shown above, plaintiff WARD told defendants DOES 1 through 8, inclusive, that he did not know where his stepson was, and refused to let them in his home without a warrant.

156.   Moreover, as shown above, defendants DOES 1 through 8, inclusive, became agitated and asked repeatedly for entry into plaintiff WARD's home, and plaintiff repeatedly denied defendants DOES 1 through 8, inclusive, into his home.

157.   Also as shown above, plaintiff WARD told defendants DOES 1 through 8, inclusive, that he had suffered a stroke due to their prior actions (e.g., "The First Incident") and he was now disabled/partially paralyzed on his left side from that stroke.

158.   Defendants DOES 1 through 8, inclusive, mocked his disability and accused plaintiff WARD of stalling for his stepson to hide or escape.

159.   Thereafter, as shown above, defendants DOES 1 through 8, inclusive, asked plaintiff WARD to step outside of his home, and he refused, telling those deputies that he did not feel safe.

160.   As shown above, in response to his refusal to step outside of his home, defendants DOES 1 through 8, inclusive, forcibly grabbed plaintiff WARD, causing a bruise on his arm, and struck the side of his head, where he had previously suffered a stroke from the deputies during that prior incident complained of above.

161.   Also, as shown above, plaintiff WARD verbally protested defendants DOES 1 through 8, inclusive's, use of excessive force and the unlawful assaults of and batteries inflicted upon his person without any legal or moral justification.

162.   As shown above, the striking of plaintiff WARD's head by said unidentified deputies was severe enough to break his nose and caused him intense pain to his head, and further led plaintiff to fear further damage to the blood clot from his prior stroke.

COMPLAINT FOR DAMAGES

163.   Thereafter, as shown above, plaintiff WARD was then handcuffed by said unidentified deputies, and the handcuffs were cinched down excessively tight causing injuries to plaintiff's wrists and arms.

164.   Moreover, as shown above, plaintiff WARD was then thrown into the back of a patrol car for several hours, and defendants DOES 1 through 8, inclusive, refused to release him or to loosen his handcuffs until he consented to a search of his home.

165.   Also as shown above, plaintiff WARD verbally protested the unlawful entry into his home and the unlawful handcuffing of plaintiff, and verbally protested about the pain and suffering the handcuffs were causing him.

166.   Due to the intense pain being inflicted upon him handcuffs in the back of a patrol car and concern for his health, plaintiff WARD reluctantly succumbed to defendants DOES 1 through 8, inclusive's coercion to keep plaintiff confined and handcuffed in the patrol car unless he consented to defendants DOES 1 through 8, inclusive deputies searching his home, and under coercion and threats told defendants DOES 1 through 8, inclusive that they could enter his home.

167.   Following this incident, plaintiff WARD was seen by a nurse at the rehabilitation center where he receives treatment the stroke that he suffered from defendants DOES 1 through 8, inclusive's actions, above-described, Apple Valley Post Acute Care Center in Apple Valley, California

168.   When plaintiff WARD was at Apple Valley Post Acute Care Center in Apple Valley, California, a nurse there confirmed that plaintiff had suffered a broken nose after being punched/hit by defendants DOES 1 through 8, inclusive.

169.    Thereafter, plaintiff WARD was taken to the emergency room at Providence St. Mary Medical Center in Apple Valley, California, where a CT scan was performed to check for further damage to plaintiff's head, where it was confirmed that said unidentified deputies had broken plaintiff WARD's nose.

170.   Moreover, the seizure of plaintiff WARD was done by defendant DOES 1 through 8, inclusive, was done in the absence of any reasonable suspicion of criminality afoot by defendant DOES 1 through 8, inclusive, and in the absence of probable cause for defendant DOES 1 through 8, inclusive, to believe that plaintiff WARD had committed a crime, and was done in an unreasonable manner.

171.   Also as shown above, defendant DOES 1 through 8, inclusive, used unlawful and excessive force upon plaintiff WARD.

172.   Said actual use of violence against the plaintiff WARD by said defendants DOES 1 through 8, inclusive, caused physical injury to WARD, and constituted the actual use of violence against the plaintiff WARD in order to deter and prevent him from exercising his constitutional right to be free from the use of excessive force upon his person, in retaliation for his protected speech (i.e. his verbal protest to and verbal challenge of defendant DOES 1 through 8, inclusive's treatment of plaintiff described above) and in retaliation for his exercise of his right to not consent to police entry into his home.

173.   Moreover, also as shown above, said defendants DOES 1 through 8, inclusive, used unlawful and unreasonable force upon the plaintiff WARD; said use of unreasonable force in itself being a violation of Section 52.1.

174.   Said defendants DOES 1 through 8, inclusive, interfered with, and/or attempted to interfere with, by use of actual violence, the exercise or enjoyment by the plaintiff WARD of the rights secured by the Constitution and laws of the United States, and of the rights secured by the California Constitution and otherwise by California law, in violation of California Civil Code § 52.1.

175.   Said defendants COUNTY, DOES 1 through 8, inclusive, are liable to the plaintiff WARD for said violations of his constitutional rights, pursuant to California Civil Code §52.1, and Cal. Gov't Code §§815.2(a) and 820.

176.   As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 8, inclusive, plaintiff WARD was: 1) substantially

COMPLAINT FOR DAMAGES

30

physically, mentally and emotionally injured, 2) incurred medical costs and expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

177.    The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00 against each defendant, save defendant COUNTY.

178.    In addition, as a result of the actions of said defendants in violation of the plaintiff's rights under Cal. Civil Code § 52.1, plaintiff WARD is entitled to an award of treble compensatory damages against all defendants, and each of them in this action, save defendant COUNTY.

**SEVENTH CAUSE OF ACTION**
**False Arrest / False Imprisonment**
**Under California State Law**
**(By Plaintiff ROBERT WARD Against Defendants COUNTY and DOES 1 through 10, inclusive)**
**For the August 12, 2024 Incident ("The Third Incident")**

179.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 178, inclusive, above, as if set forth in full herein.

180.    As complained of above, the plaintiff WARD was unlawfully seized and arrested by defendants DOES 1 through 8, inclusive, on August 12, 2024.

181.    As complained of above, said defendants DOES 1 through 8, inclusive: (1) had neither a warrant nor probable cause to believe that the plaintiff had committed a crime, nor reasonable suspicion of criminality afoot about the plaintiff; (2) The plaintiff was actually harmed by said conduct of defendants

DOES 1 through 8, inclusive; and (3) the conduct of defendants DOES 1 through 8, inclusive, was substantial factor in causing the plaintiffs, and each of them, harm.

182.    Defendants COUNTY and DOES 1 through 8, inclusive, are liable to the plaintiff for his false arrest/false imprisonment pursuant to Cal. Gov't Code §§ 815.2(a), 820 and 820.4 and otherwise pursuant to the common-law.

183.    As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 8, inclusive, plaintiff WARD was: 1) substantially physically, mentally and emotionally injured, 2) incurred medical costs and expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

184.    The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00 against each defendant, save defendant COUNTY.

## EIGHTH CAUSE OF ACTION
### Battery
### Under California State Law
### (By Plaintiff ROBERT WARD Against Defendants COUNTY and DOES 1 through 8, inclusive)
### (For the August 12, 2024 Incident ("The Third Incident")

185.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 184, inclusive, above, as if set forth in full herein.

186.    The actions committed by defendants DOES 1 through 8, inclusive, above-described, constituted unjustified non-consensual use of unlawful force and violence upon the plaintiff WARD, and constituted a battery of him by defendants

DOES 1 through 8, inclusive, under California state law.

187.    Defendants COUNTY and DOES 1 through 8, inclusive, and each of them, are liable to the plaintiff WARD for said batteries of him, pursuant to Cal. Gov't Code §§ 815.2(a) and 820 and otherwise pursuant to the common-law.

188.    As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 8, inclusive, plaintiff WARD was: 1) substantially physically, mentally and emotionally injured, 2) incurred medical costs and expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

189.    The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00 against each defendant, save defendant COUNTY.

### NINTH CAUSE OF ACTION
**Assault**
**Under California State Law**
**(By Plaintiff ROBERT WARD Against Defendants COUNTY and DOES 1 through 8, inclusive)**
**For the August 12, 2024 Incident ("The Third Incident")**

190.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 189, inclusive, above, as if set forth in full herein.

191.    The actions committed by defendants DOES 1 through 8, inclusive, above-described, constituted an assault of the plaintiff WARD under California state law, as said plaintiff was unlawfully placed in reasonable fear of receiving an imminent violent injury by defendants DOES 1 through 8, inclusive.

192.    Defendants COUNTY and DOES 1 through 8, inclusive, are liable to

COMPLAINT FOR DAMAGES

33

under California state law for said assaults of the plaintiff WARD, pursuant to Cal. Gov't Code §§ 815.2(a) and 820 and otherwise pursuant to the common law.

193.    As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 10, inclusive, plaintiff WARD was: 1) substantially physically, mentally and emotionally injured, 2) incurred medical costs and expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

194.    The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00 against each defendant, save defendant COUNTY.

**TENTH CAUSE OF ACTION**
**Intentional Infliction Of Emotional Distress**
**Under California State Law**
**(By Plaintiff ROBERT WARD Against Defendants COUNTY and**
**DOES 1 through 8, inclusive)**
**For the August 12, 2024 Incident ("The Third Incident")**

195.    Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 194, inclusive, above, as if set forth in full herein.

196.    Defendants DOES 1 through 8, inclusive, and each of them, knew and/or should have known that the plaintiff WARD was susceptible to suffering severe emotional distress from the actions taken and committed against the plaintiff by them as complained of above and herein.

197.    Moreover, the conduct of said defendants, for all of the incidents complained of herein, were outrageous and not the type of conduct condoned in a civilized society.

COMPLAINT FOR DAMAGES
34

198.   Defendants COUNTY and DOES 1 through 8, inclusive, are liable to under California state law for said assaults of the plaintiff WARD, pursuant to Cal. Gov't Code §§ 815.2(a) and 820 and otherwise pursuant to the common law.

199.   As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 10, inclusive, plaintiff WARD was: 1) substantially physically, mentally and emotionally injured, 2) incurred medical costs and expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

200.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00 against each defendant, save defendant COUNTY.

## ELEVENTH CAUSE OF ACTION
**Trespass to Private Residence / Right to Privacy in Home**
**Under California State Law**
**(By Plaintiff ROBERT WARD Against Defendants COUNTY and**
**DOES 1 through 8, inclusive)**
**For the August 12, 2024 Incident ("The Third Incident")**

201.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 200, inclusive, above, as if set forth in full herein.

202.   As shown above, on August 12, 2024 defendants DOES 1 through 8, inclusive, had no search warrants or arrest warrants for plaintiff WARD, had no voluntary consent to have entered his home, and there was no emergency situation at plaintiff's home, and nonetheless defendants DOES 1 through 8, inclusive, unlawfully entered plaintiff's home over his protest and denial of consent for them to enter his home, and unlawfully searched and unlawfully seized and took away

COMPLAINT FOR DAMAGES
35

from him items of plaintiff WARD's personal property.

203.   Also as shown above, defendants DOES 1 through 8, inclusive had no lawful reason to have physically battered and assaulted plaintiff WARD on several occasions above-described, kicking at his legs, slamming his head into a wall creating a hole, straining his arms with physical force, handcuffing him numerous times without justification, causing bleeding and injuries to his wrists, detaining/arresting plaintiff WARD for many hours without justification (i.e. no reasonable suspicion of criminality afoot of/by plaintiff, or probable cause for plaintiff's arrest) on those several occasions above-described, entering past the threshold of the doorway of plaintiff's home and dragging him out of the same several times, stealing plaintiff's personal property and ransacking his home, and had no lawful reason to have seized plaintiff WARD in any way, nor to have entered, searched and ransacked plaintiff's home or steal his personal property, which they did during the three events complained of above, all without consent, a warrant or any exigency or emergency.

204.   Also as shown above, in addition, again, there was no emergency or exigent circumstances then readily apparent, and was plenty of time for defendants DOES 1 through 8, inclusive, to have obtained a search warrant for the plaintiff's home if they believed any grounds then existed to obtain a search warrant (which there were none).

205.   Accordingly, the conduct of defendants DOES 1 through 8, inclusive, as complained of in this action, constituted a trespass to plaintiff WARD's private residence, and a violation of plaintiff WARD's right to privacy and to be left alone in his home under Cal. Civil Code § 1708.8, under California common law and under Article I, § 1 of the California Constitution.

206.   As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 8, inclusive, plaintiff WARD was: 1) substantially physically, mentally and emotionally injured, 2) incurred medical costs and

expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

207.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in excess of $5,000,000.00 against each defendant, save defendant COUNTY.

## TWELFTH CAUSE OF ACTION
**Trespass to Chattels / Right to Personal Property / Conversion
Under California State Law
(By Plaintiff ROBERT WARD Against Defendants COUNTY and
DOES 1 through 8, inclusive)
For the August 12, 2024 Incident ("The Third Incident")**

208.   Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 207, inclusive, above, as if set forth in full herein.

209.   As shown above, on August 12, 2024 defendants DOES 1 through 8, inclusive, had no search warrants or arrest warrants for plaintiff WARD, had no voluntary consent to have entered his home, and there was no emergency situation at plaintiff's home, and nonetheless defendants DOES 1 through 8, inclusive, unlawfully entered plaintiff's home over his protest and denial of consent for them to enter his home, and unlawfully searched and unlawfully seized and took away from him items of plaintiff WARD's personal property.

210.   Also as shown above, defendants DOES 1 through 8, inclusive had no lawful reason to have physically battered and assaulted plaintiff WARD on several occasions above-described, kicking at his legs, slamming his head into a wall creating a hole, straining his arms with physical force, handcuffing him numerous times without justification, causing bleeding and injuries to his wrists,

COMPLAINT FOR DAMAGES

detaining/arresting plaintiff WARD for many hours without justification (i.e. no reasonable suspicion of criminality afoot of/by plaintiff, or probable cause for plaintiff's arrest) on those several occasions above-described, entering past the threshold of the doorway of plaintiff's home and dragging him out of the same several times.

211.   Moreover, defendants DOES 1 through 8, inclusive, seized/stole plaintiff's personal property and ransacked his home, badly damaging the same, and had no lawful reason to have seized plaintiff Robert Ward's personal property, or to have entered, searched and ransacked plaintiff's home, which they did during the three events complained of above, all without consent, a warrant or any exigency or emergency.

212.   Defendants DOES 1 through 8, inclusive, had no legal or moral right to have seized or have taken away any of the plaintiff's personal property.

213.   Accordingly, the conduct of defendants DOES 1 through 8, inclusive, as complained of in this action, constituted a trespass to plaintiff Robert Ward's personal property (his trespass to chattels) and a conversion of his personal property (conversion) under California common law, and under Article I, § 1 of the California Constitution.

214.   As a direct and proximate result of the actions, above-referenced, of defendants DOES 1 through 8, inclusive, plaintiff Robert Ward was: 1) substantially physically, mentally and emotionally injured, 2) incurred medical costs and expenses, 3) incurred property damages to his home and loss of personal property, and 4) incurred general damages and expenses associated costs; all in an amount to be proven at trial which is in excess of $5,000.000.00.

215.   The actions of said defendants, and each of them, as complained of herein, were committed maliciously, oppressively and in reckless disregard of plaintiff WARD's constitutional rights, sufficient for an award of punitive / exemplary damages against said defendants, in an amount to be proven at trial, in

COMPLAINT FOR DAMAGES

excess of $5,000,000.00 against each defendant, save defendant COUNTY.

**WHEREFORE**, plaintiff prays for judgment as follows:

a)      For a judgment against all defendants for compensatory damages in an amount in excess of $5,000,000.00;

b)      For a judgment against all defendants for punitive damages in an amount in excess of $5,000,000.00 against each defendant, save defendant COUNTY;

c)      For an award of reasonable Attorney's Fees and costs;

d)      For a trial by jury; and

e)      For such other and further relief as this honorable court deems just and equitable.

_____
JERRY L. STEERING, ATTORNEY FOR PLAINTIFF
ROBERT GRAHAM WARD

COMPLAINT FOR DAMAGES
39